JOHN McNIFF v. TEXAS MIDLAND RAILROAD.

Decided June 22, 1901.

Negligence—Railway Company—Injury to Track Foreman.

Plaintiff, a railway section foreman, while engaged in his duties and walking along the track on his section near a depot, caught his foot in a small piece of wire, one end of which had become fastened in the ground, and which was hidden by frost from ordinary observation, and was injured by being thrown to the ground. Held that the railroad was not liable, because (1) it was plaintiff's duty to keep the track clear of obstructions; and (2) because permitting the piece of wire to be so on the track was not negligence, the chance of injury resulting therefrom being too speculative and remote.

Appeal from Hunt. Tried below before Hon. L. A. Clark.

· *Randell & Wood,* for appellant.

*Charles W. Ogden* and *A. H. Dashiell,* for appellee.

TEMPLETON, ASSOCIATE JUSTICE.—John McNiff was employed by the Texas Midland Railroad as a section foreman. His section extended north from the south end of the depot platform at Cooper. On the morning of January 3, 1900, as he was walking along the track of his

section about 100 or 150 feet north of the south end thereof, his foot caught in a piece of wire and he was thereby thrown to the ground and injured. He was engaged in the discharge of the duties of his employment at the time. One end of the wire had become fastened in the ground. It was a small wire, such as is commonly used in baling hay. It was covered from frost and was thereby concealed from ordinary observation. McNiff sued the railroad for damages on account of his injuries. After the evidence was closed the court directed a verdict for the defendant. This appeal is prosecuted from a judgment entered on such verdict.

On the trial McNiff testified that he was injured in the manner above stated. He relied on the testimony of L. M. Stone and William Murray to show that the railroad was responsible for the wire being on the track, and to establish negligence. Stone testified that he was night superintendent of a cottonseed oil mill which was located 200 or 300 yards south of the depot at Cooper; that the mill began operating on October 17, 1899, and continued running until after the accident to McNiff; that some feeding pens for stock were situated south of and adjoining the mill, in which about 1300 head of cattle were fed that season; that the cattle were unloaded and reloaded at the pens; that when cattle were loaded to be shipped out they were fed on hay and shucks bound with baling wire; that the wires around the bales of feed used were released on the track; that 200 or 300 bales of feed were used; that there was a corn sheller near the track between the mill and the depot, where shucks were baled and wire used in baling; that wires were scattered around the sheller and promiscuously through the yards south of the depot; that some of the cattle once escaped and ran through the yards where the wires were; that on one occasion he stumbled over a wire and came near falling and called the attention of a train crew to the fact. Murray testified to seeing small quantities of wire on the track between the corn sheller and the depot. He also stated that running trains would be liable to draw the wires back and forth. It was not shown that any of the wires except the one in question ever reached McNiff's section.

It was the duty of McNiff, as section foreman, to keep his section clear of obstructions, and unless the evidence shows that the wire was a dangerous article, and that its presence at the scene of the accident was brought about by the negligence of other agents of the railroad, then McNiff has failed to make out his case. Conceding that the evidence is sufficient to warrant the finding that the wire in question was one of those deposited on the track south of the depot, still McNiff was bound to show, before he could recover, that the railroad ought reasonably to have foreseen that it might reach the point of the accident, and to have anticipated, as a result of its being there, that physical injury to some one would follow. So far as the evidence shows, the only agencies, outside the acts of individuals for which the company would not be responsible, by which the wire could have been carried to the place

where McNiff was injured, were the stampeding cattle and the suction of trains. Only this one wire is shown to have been carried so far. The question is, whether the railroad ought to have anticipated an event so unusual and rare. At most the railroad was obliged to use only ordinary care to prevent wire from escaping onto McNiff's section; it was not bound to guard against every contingency. Therefore, the fact that it was possible for a single wire to become separated from its fellows and be carried such a distance by the agencies aforesaid, would not render it legally responsible for McNiff's injuries. The evidence clearly shows that such a result was not reasonably probable, and such being the case, the railroad was entitled to be discharged.

Even if the railroad ought have foreseen that the wire would find its way to the place of the accident, it does not follow that it ought to have anticipated, as a probable consequence, that McNiff or some other employe would be thereby injured. A single piece of baling wire is not, in itself, a dangerous article. Such wires are daily released on the premises of almost every citizen, but accidental injuries therefrom do not ensue. The citizen, guided by his experience, does not look upon these wires as agencies menacing his personal safety. What the average citizen of ordinary prudence will not do for his own protection, the railroad is not bound to do for the protection of others. That such a wire, whether found on the track of a railroad or on the premises of the citizen, will become firmly imbedded in the ground at one end and the exposed end so covered with frost as to conceal it from observation, is a contingency too remote to demand the serious consideration of the practical man busy with the ordinary affairs of life. No one is required to provide against such speculative dangers, since they can not be insured except by abstention from the transaction of business, or by a degree of watchfulness and care which would absorb the time and impair the working capacity of every laborer in every field of human endeavor. The simple act of permitting a piece of baling wire to reach a place where people may have occasion to go is not negligence. To make it so, the surroundings must be such as to create a reasonable apprehension of injury to some one. Under ordinary conditions it will not be anticipated that injury will result from such act, and the duty rests on one who relies on special circumstances to show that the danger existed and should have been foreseen, to establish the same. This McNiff has failed to do. If the wire was in a dangerous position when McNiff stumbled over it, then the railroad might be liable, but for the relation he occupied to his employer. In such case, liability would be based on the fact that the railroad negligently permitted the wire, which had accidentally gotten in a dangerous position, to remain so, and not on the ground that the wire was intrinsically dangerous, or that it was likely to get in such condition. Liability for such negligence, even if the same should be established, would not attach in favor of McNiff, as he was the agent of the railroad to discover and remove obstructions from the track, and the railroad, if negligent at all in this particular,

could be so only through its said agent, who, of course, could not take advantage of his own carelessness.

We do not hold that the presence of wire on the track might not constitute negligence under some circumstances. If quantities of wire were permitted to accumulate on the track, and, by reason of the mass itself, or because of the condition of the wires or the location of the same, the safety of those having business at such place was thereby endangered, then the jury might be warranted in finding negligence. So, if even a single wire, which had gotten into a dangerous position, was negligently permitted to remain in such condition. Again, it might be negligence, as to train and switch crews, to permit looped wires to be on the track in the yards where switching was required to be done. But McNiff has not proven facts which bring his case within any of the contingencies mentioned, and the trial court was therefore justified in instructing a verdict against him.

The judgment is affirmed.

*Affirmed.*