## St. Louis, San Francisco & Texas Railway Company et al. v. Z. L. Cason.

### Decided February 19, 1910.

**1.—Master and Servant—Place to Work—Duty and Liability of Master— Negligence—Burden of Proof.**

In a suit by a railroad machinist against his employer, a railroad company, for damages for personal injuries caused by his stepping upon some rolling object on the floor of the machine shop and being thereby thrown into an ash pit and burned, the following principles must apply and control: First, that it was the duty of the employer to exercise ordinary care to furnish the employee a reasonably safe place in which to work; second, that a defect existed in the place furnished; third, that the defect was of such character that ordinary care on the part of the employer would have discovered and remedied it; and fourth, that the negligence of the employer proximately caused the injury complained of. A failure to prove any one of said facts would be fatal to a right to recover. Evidence considered and held insufficient to show negligence on the part of the employer.

**2.—Negligence—Res Ipsa Loquitur.**

The following rule of res ipsa loquitur approved: "There must be reasonable evidence of negligence; but where the thing is shown to be under the management of the defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose from want of care."

Appeal from the District Court of Tarrant County. Tried below before Hon. Mike E. Smith.

*Andrews, Ball & Streetman* and *Chapman & Lockett*, for appellants. —Negligence can not be inferred from the mere fact that plaintiff was

caused to fall by something rolling under his foot, there being nothing to show what that something was, nor how long it had been there, nor who put it there. McCray v. Galveston, H. & S. A. Ry. Co., 89 Texas, 170; Broadway v. San Antonio Gas Co., 24 Texas Civ. App., 603; Dueler Mfg. Co. v. Dullnig, 83 S. W., 890; Missouri, K. & T. Ry. Co. of Texas v. Romans, 121 S. W., 1104; Chicago & N. W. Ry. Co. v. O'Brien, 132 Fed., 596; Shandrew v. Chicago, St. P., M. & O. Ry. Co., 142 Fed., 322; Cryder v. Chicago, R. I. & P. Ry. Co., 152 Fed., 418; Byers v. Carnegie Steel Co., 159 Fed., 350.

There was no evidence tending to support the allegation that defendant was guilty of negligence in the permitting of something which plaintiff claims was under his foot, and rolled, and caused him to fall, except the uncorroborated statement of the plaintiff to the effect that there was something under his foot which rolled and caused him to fall, and this was contradictory of his statement made on different occasions after the accident and prior to the institution of this suit. Same authorities.

*Odell & Johnson* and *Capps, Cantey, Hanger & Short,* for appellee. —There was abundant evidence of negligence on the part of defendant, and therefore the court did not err in refusing defendant's special requested instruction No. 1. Texas Cent. R. Co. v. Johnson, 51 Texas Civ. App., 126; Barnowski, Adm'r, v. Helson, 15 L. R. A., 33; Crawford v. Houston & T. C. R. Co., 89 Texas, 92.

It was the duty of the defendant railroad company to exercise ordinary care to furnish to the plaintiff a reasonably safe place to work, and the plaintiff had a right to assume that defendant had done its duty in this respect, and it was not incumbent upon plaintiff to make an inspection upon the premises or place where the work was being done in order to ascertain if the defendant had performed its duty. Texas & N. O. R. Co. v. Bingle, 91 Texas, 287; Texas & N. O. R. Co. v. Echols, 25 S. W., 1087; Webster v. Stewart Iron Works, 104 S. W., 708; Bates-Rogers Const. Co. v. Dunn, 93 S. W., 1032; Chicago, R. I. & P. Ry. Co. v. Birk, 44 Texas Civ. App., 614.

In an action by a servant against a master, where the plaintiff has proved an accident which implies negligence, it is not incumbent on him to go further and show what the particular negligence was, when from the circumstances it is not in his power to do so. McCray v. Galveston, H. & S. A. Ry. Co., 89 Texas, 168; Gulf, C. & S. F. Ry. Co. v. Wood, 63 S. W., 164; Howser v. Cumberland & Pa. Ry. Co., 27 L. R. A., 154.

Where there is evidence of negligence on the part of the defendant it is the duty of the court to submit such issue to the jury for them to determine, and their finding is conclusive on that question. Missouri, K. & T. Ry. Co. v. Edwards, 67 S. W., 891; International & G. N. R. Co. v. Ormond, 64 Texas, 489; International & G. N. R. Co. v. Gray, 65 Texas, 36; Missouri, K. & T. Ry. Co. v. Wylie, 26 S. W., 85.

SPEER, ASSOCIATE JUSTICE.—Z. L. Cason was employed by appellants as helper to one of their machinists, and while engaged in the act of repairing one of their engines in the machine shops at Fort Worth in some way his foot slipped or rolled, and he was precipitated

into the ashpit, receiving injuries for which he recovered judgment in the sum of five thousand dollars. Inasmuch as we have decided to reverse and remand the cause because there was no evidence to show negligence on the part of appellants, we will set out the entire statement of appellee in reply to appellant's assignment raising this question. The statement fairly exhibits the circumstances surrounding the injury and includes all the evidence worth stating which could in any manner affect the disposition of the case.

"The plaintiff, Z. L. Cason, among other things testified as follows:

" 'Mr. Kelly got up on that side—the right-hand—and I got my wrench after he got up on that side, to go around to get up on the other side, and as I made the reach for the wrench, when I raised up to get the wrench my foot rolled from under me and I fell in the pit. . . . I can not tell you how far my foot rolled, but it must have rolled some ten or twelve inches. I can not tell you what it was it rolled on, but it was a rolling substance of some kind; I could feel it under my foot. That is the way I could tell it was a rolling substance, by feeling it under my foot. . . . When my foot rolled on this substance I fell into the pit.'

"Later on in his testimony the witness also testified: 'I was standing still between the time that I put my wrench up there and the time I reached to get it; I was just standing in the same position, I think—had not moved, that I know of, one way or the other. I do not know what kind of a thing it could have been under my foot. I could tell by the feeling of it that there was something under my foot that rolled, but I could not tell what it was—don't know whether it was iron or wood or what it was; it was done so quick I don't know what it felt like. I just felt it under my foot.'

"The witness S. R. Ratcliffe, introduced by the defendant railroad company, testified that he was timekeeper at the defendant's shops at the time the plaintiff was injured, and that he took a statement in writing from the plaintiff, which was introduced in evidence on the trial, and after detailing the manner of his taking the statement and identifying the written statement, testified as follows on direct examination: 'As to whether or not he gave me full particulars about the accident and the cause of it, I will say that he said there was some rubbish around there.' On cross-examination he further testified as follows: 'He mentioned something about rubbish being around there. As to why I didn't put that down, will say there was no rubbish around there. It was after he had signed the statement that he mentioned the rubbish being around there. He didn't mention it to me directly, he mentioned it to several. That was when we were moving him out of roundhouse five or ten minutes after the statement was made and when I started back to the office. I heard him make that statement, and I didn't put it down because the statement was already signed and I had nothing more to do with it. I thought that was immaterial in the case, and I just put down what I thought was material in the case.'

"The same witness further on made the following statement: 'When I was going away I heard him say something about rubbish to the boys. The boys asked him how it happened after I was going away with the statement.'

"This witness again testified with reference to the condition of the shops: 'There was a foreman and seven men that worked there. They came to work at seven o'clock. These men did not clean up the rubbish that accumulated there during the night. A man working on an engine is supposed to clean up his own rubbish. Usually, the first thing this man would do would be to clean his lights. I don't know just what he would then do—would probably commence sweeping around the roundhouse.'

"C. P. Smith, a witness for the defendant railroad company, on cross-examination, testified as follows:

" 'Q.  What is the difference of the labor performed by the day men and the night men?'

" 'A.  In the daytime they figure on keeping engines there for shop purposes, you know, and then they have an outside gang—what they call the bull gang. That is something we didn't have at night. They clean up the roundhouse and the outside of it. I think it is composed of about twelve men. We have no one there at night that cleans up. The cleaning is all done in the daytime and the roundhouse is left in perfect shape at night.'

"W. L. Gibbs, a witness for the defendant railroad company, testified as follows:  'The floor of the roundhouse is constructed of cinders and head-end cinders on top. When properly put down they make a good floor, smooth and firm. This floor in October last was good, as I remember it.'

"The witness P. H. Kelly, testifying concerning the accident and the aid rendered to the plaintiff afterwards, testified as follows: 'I don't remember much that he said then; I can not say what he said then. I suppose he said something, but I don't know what it was.' The same witness also testified: 'The ground around this pit was tamped cinders, and it was as smooth as this floor. Of course, the cinders were of different shapes and sizes; these were coal cinders of different shapes and sizes. I suppose that sometimes lumps of coal roll off the engines or are knocked off the engines. . . . In working on the engines, of course, we used different materials around there—pipes and nuts and bolts of various sizes and shapes. It is not a fact that they work as many men at night as they did in the daytime. At night they got along with just as few men as they could; the men in the daytime did all the work that was necessary to be done, and the men at night did all the work that was necessary to be done, but they never have as many men at night as they do in the daytime—something like half as many. In the daytime they had a gang of men to tamp cinders and clean up around the roundhouse, but in the night-time they did not have; the night men did not make proportionately as much mess according to the number of men employed as the day men did, because there is no carpenter at work in the night, and have as little work done as can be gotten along with.'

"Mrs. Z. L. Cason, wife of the plaintiff, in the court below testified as follows: 'I saw Mr. Kelly on the morning Mr. Cason was injured. I suppose he came into town on the six o'clock car; he generally comes on that car, and Mr. Cason was brought in between eight and nine o'clock, after Mr. Kelly had already brought me the word. When Mr.

Kelly brought me the word about Mr. Cason being hurt, I asked him the particulars. Mr. Kelly came to my house that morning and knocked on the door, and I got up and dressed myself, and went out there and spoke to him, and he says: "Mrs. Cason, I am very sorry to tell you that Mr. Cason got seriously crippled this morning," and I said: "How in the world did it happen?" and Mr. Kelly said that he stepped on a rolling piece of iron and it threw him in the ashpit. I did not know at that time what an ashpit was at all.' "

At the very threshold it will be necessary to call to mind some of the elementary principles applicable to a case like this, and as to which there can be no divergence of views. First, it is the duty of the employer to exercise ordinary care to furnish his employe a reasonably safe place in which to do his work. Second, in order to recover for an injury the employe must prove that a defect existed in the place furnished him. Third, it must appear that the defect was of such character that ordinary care on the part of the master would have discovered and remedied it. Fourth, that the negligence of the employer proximately caused the injury complained of. Now, in the present case the burden was upon appellee to offer evidence fairly tending to prove each of these propositions, and if he failed in any respect he was not entitled to a verdict at the hands of the jury.

It may be admitted for the purposes of this appeal that appellee has shown that a defect existed in the place furnished him in which to do his work, and that as a proximate result of this defect he sustained injury, but it is yet to be determined whether the evidence above quoted affords any proof of negligence on the part of appellants proximately producing such injury.

But appellee invokes the principle symbolized by the maxim, *res ipsa loquitur*. We need cite no authority for the proposition that proof of an injury alone affords no evidence of negligence, since such is universally conceded to be the rule. This is necessarily true, for to say merely that the plaintiff was injured, without at the same time exhibiting any of the circumstances surrounding the occurrence, proves nothing with respect to the responsibility for it. It neither shows that the plaintiff nor the defendant was negligent in the matter, nor does it tend to do so. Logically, such evidence does not even prove that the place where the injury occurred was dangerous. It may have been an accident. It is obvious then that some of the circumstances surrounding the occurrence must be detailed before any inference of blamableness can be drawn. It is at this point that the conception embodied in the maxim invoked has its origin, and the rule has perhaps never been more accurately stated than in the oft-quoted language of Chief Justice Erle (Scott v. London & St. K. Docks Co., 3 H. & C., 596), as follows: "There must be reasonable evidence of negligence; but where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care." Our own Supreme Court, through Mr. Justice Brown (McCray v. Galveston, H. & S. A. Ry. Co., 89 Texas, 168), quotes this language with approval,

and adds: "It is well settled by authority that the circumstances attending the injury may be sufficient to establish the fact of negligence without any direct proof thereof."

In an earlier case (Texas & N. O. Ry. v. Crowder, 63 Texas, 502) our Supreme Court says: "There is no doubt that cases occur in which the accident is of such character as, of itself, when considered in connection with the facts which necessarily appear in showing the accident, to amount to sufficient proof of the want of due care by a defendant, and of the exercise of due care by a plaintiff, to authorize a jury to find both facts, without any direct proof on either point; but this does not affect the question of burden of proof, but relates rather to the sufficiency of the evidence furnished by the accident itself." So that, from these authorities, and numerous others which might be cited, it is safe to say that the rule of *res ipsa loquitur* is not one of substantive law, but is a rule of evidence only. And furthermore, that when the "accident" or "injury" or "act" or "thing itself" is referred to in the decisions as furnishing evidence of negligence, it is not meant that the injury alone furnishes such evidence, but that the attendant circumstances supply the necessary inference. It is at last proof of negligence, and not a presumption at all.

A question has arisen whether or not the rule is ever applicable to a case involving the relation of master and servant, and some courts have held flatly that it is not. Broadway v. S. A. Gas Co., 24 Texas Civ. App., 603 (60 S. W., 270.) But there is no reason for this holding when the rule is rightly understood, and the false conclusion doubtless has grown out of the fact that, for reasons presently to be stated, the rule is less frequently applied to that character of actions.

The first test to support the rule laid down in the defintion above quoted is that the thing is shown to be under the management of the defendant or his servants. This obviously means servants other than the plaintiff, and, since most master and servant cases fail to measure up to this standard, the rule itself, perhaps, has been thought to have no application. The rule is correctly settled in McCray v. Galveston, H. & S. A. Ry. Co., *supra,* in the following language: "Undoubtedly the presumption has been more frequently applied in cases against carriers of passengers than in any other cases of negligence, but there is no foundation in authority or in reason for any such limitation of the rule of evidence, as the presumption originates from the nature of the act, not from the relations between the parties." (See also Jenkins v. St. Paul City Ry. Co. (Minn.), 117 N. W., 928; Byers v. Carnegie Steel Co., 159 Fed., 347.) It has been suggested (Patton v. Texas & P. Ry. Co. (U. S.), 45 L. Ed., 361; Hamilton v. Kansas City Southern Ry. Co., 100 S. W., 671), that "a presumption" aids the plaintiff where the plaintiff is a passenger (or inferably a stranger), but does not do so in the servant's case, hence the distinction. But to our minds the real distinction, which requires less proof in an action brought against a railway company by a passenger or stranger than in an action brought by one of its servants, arises from the requirement already adverted to, that "the thing" must be shown to have been under the management of the defendant. The reason for this important distinction consists in this: that the rule itself has force only because

it justly imposes upon a party the duty of producing evidence as to facts peculiarly within his knowledge. Wigmore on Evidence, section 2509. At this initial point appellee's case fails, when tested by the rule, because the thing resulting in his injury was not shown at the time to be under the control of appellants any more than it was under his own control.

Again, it is perfectly apparent that appellee gains no comfort from this rule, unless the proof of a defect affords some evidence of negligence on the part of appellants, whose duty it was to exercise ordinary care to furnish him a safe place to work, even if we concede that he is not precluded for the reason given immediately above. The only evidence, which under the most favorable view tends to show negligence, is that a rolling substance on appellants' shop floor caused appellee's foot to slip and threw him into the pit. What this substance was, who placed it there, how long it had been there, or whether it was reasonably calculated to produce an injury such as plaintiff's was, are matters as to which the evidence is wholly silent. It may be conjectured that this rolling substance was left through the negligence of appellants' servants, whose duty it was to clean up the premises, but this is only a conjecture. Another conjecture equally as reasonable, to say the least, is that appellants' servants had performed their full duty, and the substance was afterwards dropped about the engine by some of the laborers without negligence on the part of any one. The one inference is as reasonable as the other. There is therefore no reason for preferring the one over the other. The nature of the obstruction or defect is temporary and transient, rather than inherent or permanent, and therefore shows nothing as to the length of time it had existed. It is not like a defect of such character as to show within itself the master ought to have known of its existence. If the defect had been in construction, or otherwise appeared to be of such duration as that the master in the exercise of due care must probably have known of it, a different question would be presented. But here we have the naked defect, from which either an inference of negligence may be drawn or not, according to the fancy of one's imagination.

Mr. Justice Williams, in Missouri, K. & T. Ry. Co. of Texas v. Romans (121 S. W., 1104), speaking to this very point, says: "No hypothesis on which liability could be founded is supported by evidence, unless it is true that the mere existence of the hole in the condition described by the witnesses is of itself evidence of negligence. This could only be said if it were true that a hole so situated could not probably have existed without knowledge on part of some employe of defendant for whose negligence it is responsible, supposing that employe had exercised proper diligence; and it seems obvious that this is not true." So here, the very condition shown could probably have existed without knowledge on the part of any of appellants' employes for whose negligence it would be responsible. The situation, therefore, not only does not necessarily speak negligence, but such conclusion is not even the most probable one.

The case of Galveston, H. & S. A. Ry. v. Smith, 100 Texas, 267, is not contrary to this view, but fully supports it in that the Supreme Court there held that there was evidence sufficient to authorize the

jury to find that the cause of the giving away of the handhold which resulted in Smith's injury "was that the nut was too large for the bolt, and not that the nut came apart from an undiscoverable latent defect." In that opinion the learned Chief Justice thus states a case: "Otherwise it would have appeared from the case made that the accident was a result of one of two causes, either that the nut split from a latent defect, or was too large for the bolt, and therefore came off from the pressure put upon it. In such event, we think that the plaintiff would have made no case. Since the testimony of defendant showed a probability that the cause of the accident may have been a defect in the nut not discoverable by due diligence, it was not enough to show a mere possibility that it may have resulted from another cause which was brought about from the negligence of the defendant."

The logical rule undoubtedly is, that unless the circumstances surrounding the injury render it more probable that the injury was due to the negligence of the defendant than otherwise, the act speaks nothing within itself, and affords no just inference against the defendant, and the doctrine of *res ipsa loquitur* has no application to the case. Patton v. Texas & P. Ry. Co. (U. S.), 45 L. Ed., 362; Moriarty v. Schwarzchild & Sulzberger Co. (Mo.), 112 S. W., 1034; McGowan v. Nelson (Mont.), 92 Pac., 40; Peters v. Lynchburg, etc., Light Co., 61 S. E., 745; Byers v. Carnegie Steel Co., 159 Fed., 347; Norfolk & W. Ry. Co. v. Reed, 167 Fed., 16-24; McGrath v. St. Louis Transit Co., 94 S. W., 872.

Since we hold there is no evidence tending to show negligence on the part of appellants sufficient to support the judgment in appellee's favor, the judgment of the District Court is accordingly reversed and the cause remanded for another trial.

*Reversed and remanded.*