MARSHALL & E. T. RY. CO. v. CRABB.†

(Court of Civil Appeals of Texas.    April 8, 1911.    Rehearing Denied April 29, 1911.)

MASTER AND SERVANT (§ 278*)—INJURIES TO SERVANT—NEGLIGENCE.

Plaintiff, a bridge carpenter, was riding on a hand car which suddenly slowed up because of dirt on the rails at a crossing, and·plaintiff was struck by the hand car lever and knocked under the car. It was not shown when the dirt got on the track, and the hand car had passed over the crossing the evening before. Plaintiff was the only employé who was thrown from the car. Held, that actionable negligence by the company was not shown.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 278.*]

Appeal from District Court, Wood County; R. W. Simpson, Judge.

Action by S. L. Crabb against the Marshall & East Texas Railway Company. From a judgment for plaintiff, defendant appeals. Reversed, and judgment rendered for defendant.

M. B. Templeton and Howell & Nabors, for appellant. M. D. ·Carlock, for appellee.

RAINEY, C. J. This is a suit brought by appellee against appellant for the sum of $20,000 on account of personal injuries alleged to have been received by appellee while in the employ of appellant, by being run over by a hand car.

The only negligence charged was permitting sand to be on the track .of the railroad at a dirt road crossing, which caused the hand car on which appellee was. riding, while going to his work, to check its speed, thereby causing appellee to become overbalanced and fall in front of the car which ran over him and caused his alleged injury. It was charged that appellee was a bridge carpenter, and was in the discharge of his duties, operating the hand car, in going to his work at the time of the injury. The appellant answered with a general demurrer, general denial, and specially pleaded assumed risk and contributory negligence. Upon the trial of the case before a jury, a verdict was rendered against appellant in the sum of $1,250, and judgment entered accordingly.

The evidence of appellee states the material facts, and is as follows: "My name is S. L. Crabb and I live near Winnsboro, in

this county. I was injured in the employ of the Marshall & East Texas Railway Company on the 18th day of June, 1909. I was in the employment of the company as a bridge carpenter under Jack Richardson, bridge foreman, who employed me. At the time of the injury, I had been working for the company two days. I was at Ogburn, in Wood county, when I was employed. I was injured this side of Gilmer or west of Gilmer, about 7:20 in the morning, going out to work on a hand car, which is a kind of platform on wheels, and is operated by means of handle bars in the front and rear, which are attached to a cog wheel under the car, and by working the handle bars with the hand the car runs on the railroad track. The handle bars work up and down. That morning I had been assisting in working the bars, but at the time of the accident I was not pumping. We were going downgrade at the time, and they were going too fast to hold to the handle bars. We were going some 12 miles an hour. We came to a road crossing. I was standing in front of the handle bar, on the front end of the car, and just as we hit this crossing the car suddenly slackened its speed on account of some dirt on the crossing. It overbalanced me and came in an ace of throwing me down in front of the car, and I tried to catch myself, and when I did try to catch myself the lever or handle bar hit me and sent me out in front of the car, between the tracks. There was some dirt on the crossing, and the car hit the crossing; it just checked the car suddenly, and the last I remember I was going down to the ground under the car. The dirt on the track caused the car to suddenly check and throw me off. The car checked up suddenly, and when I tried to get my balance the handle bar knocked me off the car. Where I was was the usual place for one of the hands to work the car. There was no other place for me to work, and there were five others on the car besides myself. I was standing on the front end, and just as we hit this road crossing the car suddenly checked and overbalanced me, and came near throwing me down. The handle bar or lever hit me and knocked me in front of the car. The dirt on the crossing caused the car to check. The dirt was on the track. When I fell, I fell on my breast, in front of the car. The car hit me on my hip and on each side of my backbone, and my leg in several places. They carried me back to Gilmer and sent for a doctor, and the next evening they sent me to the company's hospital at Marshall, where I stayed about two months. My hip was broken right at the joint, and I have not been able to walk since that time, only on crutches. This road runs through Wood county from Winnsboro to Marshall. I was earning $2 a day, and was paying my board out of that when hurt. I have not been able to work any since. I knew nothing about any defects in the road, and I did not know there was any sand on the crossing. The sand was about 10 feet up and down the track. A hand car with tools will weigh about 500 pounds. There were five men on same, each weighing about 175 pounds. I was 28 years old at the time of the accident, and stout and healthy. One of my legs is about 1½ inches shorter than the other—the left leg with the injured hip. I have walked only by aid of crutches since. I have suffered pain ever since. The cog of the bull wheel of the car ran over my hip, causing the intense pain and suffering ever since."

On cross-examination: "I hired to the foreman, Jack Richardson, and told him I was an experienced railroad hand, and that I had worked for the Frisco, the San Antonio & Aransas Pass Railroads, and a railroad in Louisiana. I hired at Ogburn, and the first day we went to Gilmer on this hand car, passing over this crossing. That was the 17th of June; we had no trouble at this crossing that day, and no one fell off the hand car at this crossing. We went out on the morning of the 17th on this crossing towards Winnsboro, and we had no trouble that day, and in the evening coming back after the day's work of the 17th we had no trouble coming over the crossing. The accident happened on the morning of the 18th. The weather was dry and fair. Gilmer is in a sandy country. The morning of the 18th, when we started out, the men took their positions on the car themselves. I got on without any instruction from the foreman as to getting on in front. I came in on the car the evening before on the front, and that was the first time I rode there. Two men were on the rear of the car, facing the way the car was going and working the rear handle bars. There were two men, also, between the front and rear handle bars, facing front and working the front handle bars. I was on the front and facing backwards when operating the car, and my duty was to work the front bar. I was at my place. We were going at the usual rate of speed that morning, about 12 miles an hour. At the time of the accident, I was turning around, facing the way the car was going, standing on the front end of the car. I was not holding to anything when I fell off the car. There was nothing to hold to. I could not see the other men, and did not know whether they were holding or not. Going along, I could see the crossing. We were approaching in front of me, but I was not expecting any dirt on the crossing. I began to lose my balance on hitting the crossing and lost it, and on trying to regain it the handle bar hit me, and I fell off the car. The car had passed over the crossing when I fell off. The crossing is in Gilmer, in town. I was carried to the boarding house by two of the men. I had ridden considerably on hand cars and know all about their manipulation and operation. I was riding just as the oth-

er hands were riding. I did not tell Jack Richardson I went over the crossing the way I did without holding on, because I thought I could ride the crossing. There was nothing between me and the crossing."

On redirect examination: "There was a brake on the car, but not where I could reach it. If it had not been for the dirt on the crossing, I could have passed over safely. I did not know there was any dirt on the track there. It was a wagon road over the track. In going on the hand car, we had not been in the habit of crossing this crossing—only crossed over it two or three times; and we had had no trouble before that with it. We had crossed the crossing the evening before and had no trouble, and this was the first time we had ever had any trouble. It is customary for the new man on the job to work in front, where I was. Therefore I, being a new man, had to work on the front. When we left that morning, we got on at the usual place. The foreman usually placed the men where he wanted them, and when a new man came in he had to take his place. My place was in front, with my back to the way we were going downgrade. We sometimes turned around, as the handle bars would then work so fast we could not hold to them, and we would stand up, with our faces to the front, where we were pumping. We held to the handle bars, but could not hold to them when going down hill, as the car always runs faster down hill, and therefore we could not hold the handle bars; when you are going 12 miles an hour you cannot hold to the handle bars. The brakeman on the car controls the speed of the car by the brakes. The other hands have nothing to do with it. The track is curved at the crossing. I saw the crossing before we got to it, but was not expecting any dirt on it. There were brakes on the car, and one of the hands was working the brakes. I had nothing to do with it. The foreman first put me at this place the day before the accident; this is how come me on the front end of the car. If it had not been for the dirt, the car would have passed over safely. My left leg has perished away until it is 1½ to 2 inches smaller than my right leg. Has been this way five or six months."

The only negligence claimed upon which a recovery is based is that dirt was permitted to be on the crossing, which was a public crossing. It is not shown when the dirt got on the crossing, or that appellant, or any of its servants, had knowledge of its being there. There was no defect in the construction of the crossing or track, nor was it out of repair, except as to the dirt, as stated. The appellee, with others, on a hand car, had gone over the crossing the evening before without any trouble, and the next morning in going over it the dirt only caused a

check in the speed of the car; but it was not sufficient to derail the car, or cause any other employé to fall from it. We think the evidence wholly fails to show negligence in the company, and it is insufficient to authorize a recovery. Railway Co. v. Jones, 125 S. W. 309; Railway Co. v. Cason, 129 S. W. 394; Railway Co. v. Anderson, 118 S. W. 1113; McNiff v. Railway Co., 26 Tex. Civ. App. 558, 64 S. W. 1010.

The case seems to be fully developed and no reason appears why it should be remanded for another trial. We therefore reverse the judgment, and here render judgment for appellant.