GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v.
J. M. HENNEGAN.

Decided October 21, 1903.

**1.—Actions Ex Contractu and Ex Delicto—"Tort" Defined.**

The word "tort" denotes an injury inflicted otherwise than by a mere breach of contract; or to be more nicely accurate, a tort is one's disturbance of another in a right which the law has created, either in the absence of contract, or in consequence of the relation which a contract had established between the parties. Bishop on Non-Contract Law, sec. 4. In this definition the term "right" is employed strictly in a legal sense. That is "in the sense it implies something with which the law invests one person, and in respect to which, for his benefit, another, or, perhaps all others, are required by the law to do or perform acts, or to forbear or abstain from acts."

**2.—Same—Negligence.**

The tort asserted in this case is the alleged negligence of the defendant company. "Negligence, as constituting a cause of civil action, is such an omission by a responsible person to use that degree of care, diligence and skill which was his legal duty to use for the protection of another person from injury as, in a natural and continuous sequence, causes unintended damage to the latter." An essential element of negligence is a legal duty.

**3.—Same—Master and Servant—Medical Attention.**

No duty arising from the relation of master and servant is imposed by law upon the former to furnish medical treatment to the latter in case of sickness. This cause of action, if any, arose upon the contract of the company and the plaintiff, and if maintainable it must be as an action ex contractu and not ex delicto.

Appeal from the District Court of Uvalde. Tried below before the Hon. J. S. Martin.

*Baker, Botts, Baker & Lovett* and *Ellis & Love,* for appellant.

*Fenley & Weir,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This is an action brought by appellee against appellant to recover damages which he claims to have sustained from the alleged negligence of the latter in failing to furnish him medical treatment, hospital accommodation, and service in accordance with its contract with him while he was sick in the company's employment.

The defenses pleaded were not guilty and contributory negligence.

The trial resulted in a verdict and judgment in favor of plaintiff for $3000, from which the defendant has appealed.

For the purpose of disposing of this appeal and illustrating the principles of law upon which it is determined, we will briefly state the substance of the evidence upon which the plaintiff relies for an affirmance of the judgment.

During the year 1901, prior to the 1st day of November, plaintiff was in defendant's employment at Uvalde as a section foreman and boarding master. Under the contract of employment it was agreed that

the defendant should deduct from plaintiff's wages 50 cents per month, to be applied, according to the rules and regulations of the company, to its hospital fund. In pursuance of the agreement, such deduction was made during the term of plaintiff's employment. In consideration of such deduction plaintiff was, by the contract, entitled to receive from the company medical treatment in case of sickness or physical injury as long as, in the opinion of the company's physician attending him, it was necessary, not to exceed one year's continuous treatment at hospital, or two years' continuous treatment outside of the hospital. Under the rules of the company an employe, after leaving its service, was not entitled to the benefits of medical and surgical treatment, but on making application therefor on the date of the termination of the term of his employment, to the superintendent and chief surgeon of the department in which he was employed, he would be entitled to such treatment for disabilities incurred prior to his discharge while in the company's employ, and to a continuance of the treatment until discharged as cured by some surgeon of the company. To entitle an employe to the medical or surgical treatment the rules of the company require an order on a certain form, signed by some one authorized to issue it, to be given to the company's surgeon at the time his services were first required. This order is called a permit. When such permit was issued if the surgeon saw fit to send the employe in whose favor it was given to the hospital, he was required to sign and return it to him, and then he was to take it to the station agent, who would countersign it, and it would serve as a pass over the company's road to the hospital, and entitle him to medical treatment therein. At the time plaintiff claims he was in need of and entitled to medical treatment, which he alleges was negligently refused him by the company, its roadmaster, J. P. Kelley, was the officer whose duty it was to issue such permit.

On the 15th day of October, 1901, plaintiff, while in defendant's employment, was sick with a fever and suffering with bladder and kidney trouble. On that day he notified Mr. Kelley of his sickness, and requested him to send a man to take his place, but did not then notify him that he was in need of a physician or request a permit for medical treatment. But on the 23d, he wrote Mr. Kelley that he was still sick, and renewed his request to send a man to take his place, and to furnish him with a hospital permit. Such permit not being furnished him, plaintiff renewed his request to Kelley by wire, and in response the permit was sent on the next day, the defendant at the same time discharging plaintiff from its service. On the 1st of November the plaintiff in person presented the hospital permit to the company's local physician and surgeon at Uvalde, and asked to be sent to its hospital at San Antonio for treatment. This request was refused upon the ground that plaintiff was not entitled to medical treatment from the company, because he had been discharged from its service. Defendant company never gave plaintiff the medical treatment, nor furnished him the hospital service and accommodation contemplated by its contract with him.

After his discharge plaintiff was examined and treated for his ailments by other physicians, but on account of financial condition he was unable to procure such treatment, service and accommodation as the company, by its contract, had agreed to furnish him. He never recovered from the disease of his kidneys, and has suffered, and his health grown worse from it ever since the 15th of October, 1901, and his physician gives it as his opinion that it is incurable. The evidence in some degree tends to show that if plaintiff had received proper medical treatment at the incipiency of the disease, his health might have been restored.

In our opinion plaintiff has wholly mistaken the character of his cause of action; that it is ex contractu and not ex delicto. Evidently the cause of action, if any there be, disclosed by pleading and evidence, arises from a breach of contract, and not from a tort.

While a tort, perhaps, has never been accurately defined, and from its nature may be incapable of an exact definition, the nearest approach to it, it is believed, has been made by Sir Frederick Pollock, in summing up his normal idea of it, which is as follows:

"Tort is an act or omission (not being merely the breach of a duty arising out of a personal relation, or undertaken by contract) which is related to harm suffered by a determinate person in one of the following ways:

"(a) It may be an act which, without lawful justification or excuse, is intended by the agent to cause harm, and does cause the harm complained of.

"(b) It may be an act in itself contrary to law, or an omission of specific legal duty, which causes harm not intended by the person so acting or omitting.

"(c) It may be an act or omission causing harm which the person so acting or omitting did not intend to cause, but might and should with due diligence have foreseen and prevented.

"(d) It may, in special cases, consist merely in not avoiding or preventing harm which the party was bound, absolutely or within limits, to avoid or prevent." Webb's Pollock on Torts, p. 20.

It is too clear for argument that no act or omission complained of by plaintiff or shown by the evidence in this case falls within this definition, for it clearly excludes the character of omission upon which this action is based. No duty arising from the relation of master and servant is imposed by law upon the former to furnish medical treatment to the latter in case of sickness. This case simply shows an omission of the defendant to perform a duty "undertaken by contract," and not an omission to discharge a duty imposed by law.

"The word 'tort' denotes an injury inflicted otherwise than by a mere breach of contract; or, to be more nicely accurate, a tort is one's disturbance of another in a *right* which the law has created, either in the absence of contract, or in consequence of the relation which a contract had established between the parties." Bishop on Non-Contract

Law, sec. 4. In this definition the term "right" is employed strictly in a legal sense. That is, "in the sense it implies something with which the law invests one person, and in respect to which, for his benefit, another, or perhaps all others, are required by the law to do or perform acts, or to forbear or abstain from acts." Cooley on Torts, 23.

Though a tort is a breach of a duty which the law, in distinction from a mere contract, has imposed, yet the imposition of it may have been because of a contract, or because of it and something else combining, when otherwise it would not have created the duty. In such a case the party injured by the nonfulfillment of the duty may proceed against the other for its breach or for the breach of the contract at his election, for one overlaps the other. This is illustrated by cases against common carriers, telegraph companies, innkeepers, etc., upon whom the law in the interest of the public has imposed certain duties, a breach of which is a tort, though there is also a contract which is violated by the same act. Or an illustration more analogous to the facts in the case under consideration might be made by the following hypothetical case: If a railway company, having undertaken to furnish its employes medical and surgical treatment, through its failure to exercise ordinary care in procuring the services of a competent and skillful physician, employed an incompetent and unskillful one, who, by reason of his incompetency or lack of skill, in attending one of the company's servants, failed to treat him with proper care and skill, whereby the employe was injured, the company would be guilty of a tort, as well as of a breach of contract.

But the tort, though connected with the contract, would arise from the company's failure to discharge the duty imposed upon it by law. While independent of a contract no duty rests upon a master to furnish his servants with medical and surgical treatment, yet if he undertakes to furnish such treatment, the law imposes upon him the duty to use reasonable care and diligence in engaging the services of a competent and skillful physician and surgeon for that purpose. And if, through his failure to exercise such care and diligence, the physician employed is incompetent and unskillful, and, through such incompetency or lack of skill in the treatment of the servant, injures him, the law holds the company responsible for its failure to discharge the legal duty thus imposed upon it. Such liability rests upon a failure to discharge a *duty imposed by law,* and is independent of any duty arising from a contract. Webb's Pollock on Torts, 534.

The supposed tort in this case, upon which it is sought to hold the defendant liable, is claimed by plaintiff to be negligence. "Negligence, constituting a cause of civil action, is such an omission by a responsible person to use that degree of care, diligence and skill which was his legal duty to use for the protection of another person from injury as, in a natural and continuous sequence, causes unintended damage to the latter." Shearm. & Redf. on Neg., sec. 3. An essential element of negligence, as is shown from this definition, is, as in all other species

of tort, *a legal duty.* Without such *legal duty* and a breach of it, there can be no negligence or any other species of tort.

As the undisputed evidence, taken most strongly in favor of the plaintiff in this case, shows no breach of a legal duty by the defendant towards the plaintiff, but simply an omission of the former to perform a contract involving no legal duty, and from which no such duty arose from extraneous circumstances depending upon it, we can not see upon what principle the judgment rendered in this case can be sustained. If we are correct in our view of the law applicable to the facts in this case, negligence could not have been rightly found by the jury, for there can be no negligence when the undisputed evidence shows clearly an absence of its most essential element.

The elements of damages, as well as the principles upon which they are founded, are essentially different in actions ex contractu and actions ex delicto. Actions upon contract do not, by reason of the nature of the transactions involved, ordinarily embrace any other than pecuniary elements. But in actions for tort founded on personal injury, every particular phase of the injury may enter into consideration in estimating the damages,—loss of time, with reference to the injured party's condition and ability to earn money in his business or calling; his loss from permanent impairment of faculties, mental and physical pain and suffering, disfigurement and expenses. Suth. on Dam., secs. 92, 93, 100. If the injury from negligence results in the death of the injured party, then a right of action is given certain of the deceased's relatives against him who negligently inflicted the injury. In such an action, though arising from the same negligent acts of the defendant, the elements of damages are different from what they would have been in an action brought by the injured party himself, had not death ensued. It can not be successfully contended that if the plaintiff in this case had died from the failure of the appellant to furnish him the medical treatment and care it contracted to, it would have been liable to his parents, wife and children for the damages accruing to them by reason of his death.

While the case made by the plaintiff's pleadings and evidence was met and fought all the way through by the defendant as though it were one of negligence, yet the ingredients of contract and elements of negligence, and the damages flowing merely from the breach of one and the existence of the other, are so essentially different that we can not see how a case can be properly tried and a right judgment entered upon the theory that the cause of action arises from negligence, when it is merely a breach of contract. The error, though not assigned, of such a trial is, in our opinion, so fundamental that it requires a reversal of the judgment.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*