### GALVESTON, H. & S. A. RY. CO. v. LANDEROS. (No. 8514.)

(Court of Civil Appeals of Texas. Galveston. May 9, 1924.)

**1. Appeal and error ⬅⮕854(1)—General judgment sustained if supported by evidence as to either ground of negligence.**

General judgment for plaintiff in action for negligence should not be disturbed on appeal, if case, to extent of award, was properly made out on allegations as to either ground of negligence.

**2. Negligence ⬅⮕119(1)—Plaintiff must prove at least one act of negligence.**

Plaintiff alleging specific acts of negligence must prove at least one and show it to be proximate cause of injury.

**3. Negligence ⬅⮕121(2)—Not presumed from injury.**

Negligence cannot be presumed from mere fact of injury.

**4. Master and servant ⬅⮕92(1) — Failure to furnish medical treatment as agreed only breach of contract.**

Railway company's refusal to furnish medical treatment and hospital facilities to injured employee, as agreed, until 19 hours after injury to eye rendered it liable only for breach of contract and not for tort.

**5. Master and servant ⬅⮕96(1) — Employee must show failure to furnish medical attention was proximate cause of injury.**

Employee alleging employer's failure to furnish prompt medical attention as basis of recovery for injury must show that delay was proximate cause of injury.

**6. Master and servant ⬅⮕276(2) — Judgment for injured servant held not supported by evidence.**

Proof of injury to section hand's eye by something hard striking it while he was working near other hands, who were shoveling gravel containing rocks, *held* insufficient to support judgment for him, as showing neither master's negligence nor responsibility for injury.

**7. Negligence ⬅⮕134(11) — Evidence sufficient to reasonably justify inference of causal connection between injury and violation of duty necessary.**

While direct proof of negligence or responsibility for injury is unnecessary to warrant recovery, there must be enough shown, in addition to injury itself, to reasonably establish or justify inference of causal connection between it and violation of duty by defendant.

**8. Evidence ⬅⮕54—Violation of duty essential to negligence.**

Violation of no duty appearing, there can be no negligence, as it is not admissible to go into domain of conjecture and pile one presumption on another.

**9. Master and servant ⬅⮕92(1)—Recovery for loss of eye held dependent on proof of refusal to render prompt medical attention.**

Recovery for loss of eye, sight of which petition alleged would have been saved if prompt medical aid had been furnished by employer as contracted for, *held* dependent alone on alleged refusal to furnish such attention rather than alleged negligence causing original injury.

**10. Master and servant ⬅⮕276(2)—Recovery for loss of eye held not authorized on either of two theories as to proximate cause.**

In absence of testimony as to extent of initial injury to eye, or whether its subsequent loss could have been averted by earlier medical attention, recovery was unauthorized, whether on theory that original injury or subsequent delay in furnishing medical treatment was proximate cause; matter not being susceptible of determination from general experience.

**11. Evidence ⬅⮕75 — Defendant's failure to offer evidence not evidence of truth of plaintiff's claim.**

Unless plaintiff makes out prima facie case, defendant's failure to offer evidence cannot be regarded as evidence of truth of plaintiff's claim.

**12. Appeal and error ⬅⮕1175(3) — Judgment rendered for defendant on reversal for absence of evidence of proximate cause of injury.**

In absence of evidence that original injury or subsequent delay in furnishing medical treatment as contracted for was proximate cause of subsequent loss of eye, judgment for plaintiff should be reversed and, cause having been fully developed below, judgment rendered for defendant.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Action by Jose Landeros against the Galveston, Harrisburg & San Antonio Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Baker, Botts, Parker & Garwood and Garrison & Watson, all of Houston, for appellant.

Fulbright, Crooker & Freeman, of Houston, for appellee.

GRAVES, J. A correct statement of the nature and result of this cause is comprehended within these quotations from the briefs filed in this court by the parties to it; the first being taken from appellee's, to which we have added the concluding recitations in full of paragraph V of the trial petition, and the second from appellant's:

---

(1) "The appellee filed this suit against appellant, Galveston, Harrisburg & San Antonio Railway Company, and alleged in his first amended original petition (the pleading upon which he went to trial) that on or about the 9th day of October, 1922, while working as a section hand for the defendant at or near Rosenberg, in Ft. Bend county, Tex., he was injured by the negligence of the defendant, and without any fault on the part of the appellee, by a rock or some other similar object, which rock or other similar object was caused to fly up and hit appellee in the eye by the manipulation of a shovel or pick in the hands of another section hand employee of appellant who was working with appellee; that appellee along with several other section hands were working together on appellant's right of way and track near Rosenberg, under the supervision of one of appellant's officers, agents, or employees known as a section foreman, when a rock or some other similar object was caused to fly from the roadbed or track of appellant by the manipulation of a pick or shovel in the hands of a fellow servant of appellee, which resulted in the loss of his eye; that the proximate cause of his injury was the carelessness and negligence of the appellee, its agents, servants, and employees in the following particulars: (a) In failing to provide appellee with a safe place in which to engage in his occupation; (b) in failing to provide proper safeguards to prevent appellee from being injured in the manner set forth in his amended petition; (c) in negligently instructing and permitting other section hands to work so close to appellee as to cause his injury, as aforesaid; (d) in appellant's servants and employees negligently and carelessly handling and wielding the tools furnished them by the appellant; (e) in appellant negligently employing careless, incompetent, and negligent fellow servants to work with appellee.

"Appellee further alleged that, in consideration of appellant deducting 50 cents per month from his wages, appellant had agreed and undertook to furnish him, free of any other charge, medical attention and hospital service and transportation to a place where he could get medical and hospital attention at any time the same might become necessary; that as soon as appellee received the injury, as aforesaid, to his eye, he immediately informed appellant's section foreman, under whom he was working, and asked that he be given a permit which would entitle him to the services of appellant's doctor at Rosenberg that he might receive the attention that was necessary and needed by him; * * * but that each and every demand as aforesaid so made by plaintiff and his relatives was refused by defendant's said section foreman up and until about 10:00 o'clock of the next day, and about 19 hours after said injury was sustained, as aforesaid, at which time defendant's section foreman finally gave plaintiff the necessary written permission to visit and obtain the necessary medical advice and treatment of the aforesaid physician at Rosenberg, and that as soon as plaintiff did secure the attention of said railway company's physician at Rosenberg the said physician immediately sent this plaintiff to the Southern Pacific Hospital at Houston, where he arrived some time in the afternoon, and about 24 hours after said injury, and where he remained for approximately 2 weeks, during which time his eye was removed, and the vision from said eye, and the eye itself, was entirely and permanently lost to this plaintiff; that plaintiff says if prompt medical aid and attention had been furnished this plaintiff in response to his immediate and original demands and requests, as aforesaid, that the sight of his right eye would have been saved and that he would not have suffered as serious an injury and the mental anguish and pain as he did suffer, and is now suffering, but that the vision of said eye and the eye itself would have been restored to its normal condition as of before the said injury; and that, without reference to the particulars surrounding the injury to his eye, and without reference to the manner in which the same originally occurred, that the defendant's agent, servants, and employees, as aforesaid, were further careless and negligent in refusing to immediately carry and transport this plaintiff to a place where he could get the medical and hospital care and attention which had been provided for him and for which he had been paying for many years as aforesaid, and by refusing to issue the necessary written permit which would enable plaintiff to obtain and secure the service and attention of said railway company's services this plaintiff was entitled to, and had been paying for many years, as aforesaid, and whose services this plaintiff could not obtain without said written permit; all of which said medical and hospital services, and free and immediate transportation to a point where same could be obtained, and a written permit which would entitle plaintiff to and was necessary before plaintiff could obtain same, was agreed and undertaken to be furnished this plaintiff and other employees when necessary by defendant railway company, as aforesaid."

(2) "The defendant answered with a general demurrer and special exceptions and with a general denial and a plea of contributory negligence. The defendant specially excepted to that part of plaintiff's first amended original petition wherein he complained of the failure of the defendant company to furnish him with a permit to see the company doctor. By its special exceptions the defendant took the position that the failure to furnish such permit could only render the defendant liable as for a breach of contract, and could not render it liable as for a tort.

"The court overruled defendant's special exceptions to such part of plaintiff's petition, and the case went to trial before the court without a jury on the 15th day of March, 1923, and, after the plaintiff had finished with his evidence, the defendant, taking the position that the plaintiff had not made out his case, rested without the introduction of any testimony, whereupon the court rendered judgment for the plaintiff in the sum of $2,500, together with interest thereon from the date of judgment."

[1] The trial court's judgment, both in finding appellant guilty of negligence and in fixing the amount of appellee's damages, was general, and if a case to the extent of the award was properly made out against it on either division of the allegations as so made, it should not be disturbed upon appeal.

[2-5] Appellant, however, in this court as-

sails the judgment on three considerations, all of which we conclude are sound, thereby presenting a fatal objection to the case as attempted to be made by the appellee, whether regarded as based upon the one or the other ground of negligence charged, as follows:

"First proposition: When the plaintiff alleges specific acts of negligence, at least one of such acts must be proved and shown to be the proximate cause of the injury, and negligence cannot be presumed from the mere fact of the injury.

"Second proposition: When a railway company contracts to furnish medical treatment and hospital facilities to an employee in case of injury to such employee, a failure to furnish such treatment would not render the company liable for tort, but only for a breach of contract.

"Third proposition: When the plaintiff alleges as a basis of recovery the failure of the defendant company to furnish prompt medical attention after the alleged injury, it is incumbent upon plaintiff to show that the alleged delay was the proximate cause of the alleged resulting injury."

[6, 7] The appellee does not question the abstract soundness of this first-quoted proposition, but counters with the suggestion that both negligence and proximate cause may be shown by circumstantial evidence, arguing that enough was so shown here to support the judgment rendered; but, after a careful study of the statement of facts, we are unable to agree with him. Presumably his theory is that a rock flew from the shovel of another of the workmen and hit him in the eye, but the only evidence offered as tending to show that such a thing happened and that appellant's negligence caused it was this:

The appellee himself testified:

"In October, 1922, I was working on a section near Rosenberg (which was agreed by the parties that Rosenberg is a town approximately 35 miles from Houston on the Galveston, Harrisburg & San Antonio Railroad, in Ft. Bend county, a county which joins Harris county); just before I was hurt in October, 1922, I was working with a pick and shovel, cutting grass from the track and repairing the track; that was my work as a section hand. There were about four other men working there at the same kind of work beside me; they were doing the same sort of work for the company and everything just like I was. We were all working there together on the track at the same time just before I was injured. Mr. Lewis was our foreman, or boss; he is an American man; he was assistant foreman of that section. The other four or five men and I worked under Mr. Lewis, this American section foreman. The foreman told us what to do, this Mr. Lewis I speak of. On October 9, 1922, in the afternoon, I was cutting grass on the railroad track there for the railroad company, and I hurt my eye. It is my right eye that is now done up. It happened about 3 o'clock in the afternoon. I don't know how I was hurt. When I suddenly thought of it something hit my eye. I do not know what it was, or what sort of a thing it was, that hit my eye. I can-

not describe it, but I think it was something hard, because it hurt my eye. That eye was all right before that. * * * At the very minute my eye was hurt I was cutting grass. These other four or five men that were right there with me were doing the same work, just a short little distance from me. * * * I said something struck me in the eye and I said it was sudden. I said it must have been hard because it hurt me. I did not see the object and don't know the size of it that struck me in the eye. The only ones near me was the ones I was working with; they were doing what I was, digging with their shovels. There were quite a few rocks along the railroad track where those men were digging with their shovels. These men were digging at or near where these rocks were. * * * No man came up there and hit me in the eye. I know that it was no man that hit me. No hand car came along there and struck me in the eye. I know that did not happen. I never saw any boy chunking over there."

Melchor Pena testified:

"On October 9, 1922, I was a section hand on the Galveston, Harrisburg & San Antonio Railway section near Rosenberg. On that date I was working in the same section with Jose Landeros. That day Jose Landeros was hurt in his eye; that was the eye which he lost. I was working on the other side of the track from Jose Landeros. I was working on one side of the track and Jose was on the other side. Jose was on one side of the rail and I was on the other, where the train goes between; it is just the outside of the rail. I don't know more or less the distance from one side of the track to the other, but it is the regular size train from here to San Antonio; it is just the regular size railroad track. It is about four feet from one side of the track to the other. I was fixing up the gravel, I guess it is, and trying to smooth that, and take it and put it in the center of the rail, the track. Jose Landeros was doing what I was doing. I was doing that with a shovel. A man by the name of Lewis was directing the work; Lewis was foreman; he was working with us, but was our boss. He was the foreman at said time, because the real first foreman was not there. Lewis was directing the work. You asked me how I was using the shovel. I was just picking up the gravel altogether that was around the railroad and throwing it inside of the track. * * * In doing that I would get the dirt on the outside of the track and shovel it into the middle of the track just enough to even up the track; I got the dirt from outside of the track and put it to the inside. Each one was shoveling the outside to the inside. * * * Jose Landeros was injured about around 3 to 4 o'clock in the afternoon. Landeros continued working. Landeros told the foreman to give him an order so as to go to see the doctor because he was injured by a rock. * * * I was four or five steps from the point where Jose was working. * * * I was using a shovel myself at the time. I was just shoveling up the loose gravel, that is, shoveling and putting it over in between the rails, and I was about four or five steps away. * * * Jose was at the other side; the dirt was in between the two. * * * (To illus-

trate, the two side rails of the jury box were used to represent the track.) I was inside; Jose was that way (indicating). I was throwing the gravel just about the direction where Jose was. The gravel hit the ground near where the holes were; the gravel hit there hard. I have already stated that it was four or five steps down the track from where I was standing."

The net effect of this testimony, when boiled down, is that an injury to the man's eye occurred under the general circumstances the two witnesses tell about, but, by all the authorities, proof of that fact alone, whether under the application of the rule of evidence designated by the phrase "the thing itself speaks," or otherwise, affords no evidence whatever of either negligence or responsibility for it; while direct proof is not necessary, there must at least be enough shown, in addition to the injury itself, to reasonably establish or justify the inference of a causal connection between it and some violated duty on the part of 'the one sought to be held. 29 Cyc. 623; G., H. & S. A. Ry. Co. v. Fred (Tex. Civ. App.) 185 S. W. 896; Mo. Pac. v. Porter, 73 Tex. 304, 11 S. W. 324; St. L., S. F. & T. Ry. Co. v. Cason, 59 Tex. Civ. App. 323, 129 S. W. 394; G., C. & S. F. Ry. Co. v. Davis (Tex. Civ. App.) 161 S. W. 932; Texas & Pacific Coal Co. v. Kowsikowsiki, 103 Tex. 173, 125 S. W. 3.

Another statement of the rule is:

"Evidence incapable of affording any reasonable presumption or inference as to the principal matter in dispute is no evidence at all." G., C. & S. F. Ry. Co. v. Matthews (Tex. Civ. App.) 73 S. W. 418; Kellogg v. McCabe, 92 Tex. 199, 47 S. W. 520; T. & P. Ry. Co. v. Shoemaker, 98 Tex. 451, 84 S. W. 1049.

Clearly what these witnesses say can furnish no proper basis from which it can be reasonably presumed or inferred that it was a rock that ·hit appellee in the eye, that it was thrown from the shovel of one of the other employees, and that that act was attributable to negligent conduct upon appellant's part in any definite or indicated respect; there is in it no attempt to establish any failure to provide appellee a safe place within which to work, nor to provide proper safeguards to prevent his being injured, nor that the section foreman carelessly instructed and permitted other hands to work so close to appellee as to cause the injury as charged, nor that appellant either employed incompetent fellow servants to· work with appellee or that any of its other employees so carelessly handled the tools furnished them by it as to cause a rock to fly up and strike him, as is alleged in the particular negligence counts in the petition, (a), (b), (c), (d), and (e), above quoted. There is no evidence that a rock hit him at all, but if, in the face of his own positive statement that he did not know what it was that struck him, a presumption that such was a fact could be built

upon ·his being quoted by the other witness as having said at the time that "he was injured by a rock," still there is an utter absence of anything even tending to indicate that any culpable act or omission of appellant brought it about; only a small group of five or six hands, inclusive of appellee, were at work out on the open railroad right of way, cutting grass from and throwing dirt onto the track with picks and shovels, presumably the nearest of the others to him being from 12 to 15 feet away and the railroad track being between them; no suggestion appears of their being incompetent to do this work, of their being careless in actually doing it, or of their being either placed too close together for mutual safety or supplied with defective tools, none even that at the time of appellee's injury any other workman had pitched dirt in his direction or that his face was then turned that way; all these matters are left to pure conjecture.

[8] The violation of no duty appearing, there can be no negligence, since, in the language of the Supreme Court in the Mo. Pacific v. Porter Case, supra, "it is not admissible to go into the domain of conjecture and to pile one presumption upon another."

[9] On this phase of the case another consideration is most potent: The only injury declared upon was the loss of the eye, with its consequent suffering, loss of time, incapacity to labor, etc., and the petition itself, by the plainest sort of averments, not only admits that the original injury to it was not the, proximate cause of the final loss of the eye, but explicitly declares that the delay in furnishing him the medical aid contracted for was the cause without which that result would not have ensued, as follows:

"That plaintiff says if prompt medical aid and attention had been furnished this plaintiff in respect to his immediate and original demands and request, as aforesaid, that the sight of his eye *would have been saved;* * * * that *the vision of said eye, and the eye itself, would have been restored to its normal condition as of before the said injury.*" (The underscoring is our own.)

By the declarations of the litigant himself, we think this reduces ,his case to one dependent alone upon the second division in his trial pleading, which grounds his action on the refusal to sooner furnish him medical attention, as agreed; but, whether or not this conclusion is sound, we now turn to an independent consideration of that feature.

In this respect there is an express agreement to promptly furnish that service and a refusal for nearly 24 hours to carry it out alleged, that is, an ordinary action for breach of contract. On appeal it is argued for appellee that there was no refusal upon appellant's part to give him the permit or the medical aid it entitled him to, but only negligent delay in the manner and method it

adopted in carrying out the obligation it recognized; the trouble with this position, however, is that it makes a decidedly different case from that pleaded by the appellee in his petition, from which the reaches of his cause of action must be determined.

As the foregoing quotation from the pleading shows, he there averred:

"But that each and every demand, as aforesaid, so made by plaintiff and his relatives, was refused by the defendant's said section foreman up until 10:00 o'clock the next day."

And the undisputed facts about this matter are just as the appellee alleged them; appellant failed and refused to comply with its contract, its section foreman refusing to give appellee the requested permit until 10:00 o'clock in the morning following the injury the afternoon before, thus for 19 hours entirely failing and declining, not merely being negligent in the manner of going on with a performance it had entered upon, to do that which it had expressly bound itself to do, thus committing a direct breach of its contract. For that dereliction it could only be held liable for breach of contract and not mulcted in damages as for tort. G., H. & S. A. Ry. Co. v. Hennegan, 33 Tex. Civ. App. 314, 76 S. W. 452; Scanlon v. G., H. & S. A. Ry. Co. (Tex. Civ. App.) 86 S. W. 930.

It follows that appellee mistook his remedy in this regard, and that his judgment, resting upon a wrong theory, cannot be permitted to stand.

[10] But, if this were not so, there is yet another fatal impediment; there was no evidence sufficient to justify a finding as to which one, if either, of the two culpable acts relied upon furnished the proximate cause of the loss of the eye; even were the above-stated conclusion, as to appellee's pleadings having constituted an admission that the original injury was not the proximate cause of that result, not justified, the least that could be said of them is that they raised the issue of fact as to whether it or the subsequent delay in furnishing the medical treatment so caused it, and yet there is no proof upon either feature. There is neither any testimony whatever as to the extent of the initial injury, that is, whether the hurt was at that time hopeless or so slight that it might have yielded to treatment, nor any as to whether the lack of earlier medical ministration brought about what otherwise could and would have been averted; no expert testimony was offered, neither the physician who first examined the eye, nor the one who later at the hospital treated and took it out, being put upon the witness stand. This hiatus in the record as to one of the essential elements of a case is not supplied by the suggestion appellee offers that such a result from delay in obtaining proper medical attention is the common experience of mankind, and therefore may be inferred without proof; obviously the proximate or immediate cause of the ultimate loss of so complicated an organ as the human eye, following an injury as to which neither the original extent nor the subsequent development in any wise are shown, is not a matter susceptible of determination from general experience; it being a concrete and particular physical state, resulting from exclusively individual conditions, plainly there could, in the nature of the case, be no common experience of mankind generally applicable to it; rather would there be necessary either the specific facts and circumstances obtaining, or, at least, the opinion of those having knowledge of and skill in such matters; it certainly could not be legitimately presumed from any disconnected experience of the race, however common or general, that this particular eye, in a condition at the time we know nothing about, could and "would have been restored to its normal condition as of before the said injury," had there been no delay in its receiving medical aid. Of course, it may be inferred, from common knowledge about and proper appraisement of the value of skilled medical attention, that, had it been promptly administered in this instance, there would probably have been relatively less suffering to and more likelihood of a cure for this poor Mexican; but, under the above-outlined case as made and limited by him, that deduction would get nowhere at all.

Counsel for appellee at this point rely upon an expression of the court in Telegraph Co. v. Wilkins (Tex. Civ. App.) 183 S. W. 429, used in commenting upon the propriety of an argument of counsel to the jury to the effect that it is not necessary to prove the usual and natural consequences of an act shown by the testimony; that the jury, as well as any witness, may take cognizance of them as the common experience of mankind. But that was a wholly dissimilar situation; the action was one for slander; the "act shown by the testimony" was that slanderous statements had been made in the presence of others, and the attorney's comment was that "slander goes upon wings and is scattered; slander gets wings and never stops." In holding the remark not improper, though unsupported by evidence, the court said the truth of the statement was known of all men and no weight to that as a fact would have been added by any amount of testimony to it; there court and counsel were dealing with a psychological condition or state of mind characteristic of men everywhere and in all times, not, as here, with an individual and purely physical happening.

[11] Neither can the rule of evidence referred to by this court in Texas Co. v. Clarke (Tex. Civ. App.) 182 S. W. at page 353, and Donoghue v. Lee (Tex. Civ. App.) 228 S. W. at page 960, to the effect that in certain circumstances the defendant's failure to produce

evidence it possesses may have probative force in aid of plaintiff's evidence, have any application; that doctrine only applies where a plaintiff has first made out a prima facie case, and unless he has done so, to use the further declaration of the Clarke Case, "the defendant is not required to offer any evidence, and his failure to do so cannot, under any circumstances, be regarded as any evidence of the truth of plaintiff's claim."

The brief for appellee cites and ably discusses a number of authorities in support of the several contentions it advances for upholding the judgment, but, when closely analyzed, we feel sure that none of them, upon a state of facts in effect the same, run counter to the conclusions herein stated; it is therefore not deemed necessary to review them.

[12] Under these conclusions, the cause having been fully developed below, the trial court's judgment should be reversed and the cause should be rendered in appellant's favor; this court's order to that effect has been entered.

Reversed and rendered.