**CORTES v. BALTIMORE INSULAR LINE, Inc.**

No. 357.

Circuit Court of Appeals, Second Circuit.
July 28, 1931.

shipped as a seaman for a voyage from the port of New York to Boca Grande, Fla., and return, in October, 1928. During the return voyage Santiago became sick. After the vessel reached port he was removed to the Staten Island Marine Hospital, where his condition was diagnosed as lobar pneumonia with consolidation on both sides. He died the following morning.

The complaint charges that during the several days of Santiago's dangerous illness the officers of the ship failed to give him medical care and attention, allowed him to remain in the sailors' quarters in the forecastle, which were cold, unsanitary, and equipped with insufficient bedding, provided him with insufficient and improper food, failed to obtain aid from passing vessels, sought no medical assistance when anchor was dropped at Sandy Hook, and after the steamer's arrival at its destination delayed for several hours to remove him to a hospital, and that his death resulted from the negligence of the defendant as above set forth. At the conclusion of the evidence, the jury found for the plaintiff; and, since the record is not entirely barren of evidence to support some of the charges, we must take it that the defendant failed to give Santiago the care he should have been given during his illness. The evidence would not, in our opinion, sustain a verdict based on the theory that any affirmative acts of the defendant's agents caused his death, but it might justify a finding that the defendant omitted performance of its maritime duty to provide "cure" to the sick seaman, in that it failed to land him at some port on the voyage north, or to furnish more expert medical treatment on board, or to get him promptly to a hospital on arrival of the vessel at the port of New York. We shall assume for purposes of our discussion a causal relationship between such omission by the defendant and the sailor's death.

By the maritime law a seaman who falls sick or is wounded in the service of the ship has always been entitled to "wages, maintenance and cure"—that is, care, for the word "cure" means care, not a positive cure, which may, indeed, be impossible. The Mars, 149 F. 729, 731 (C. C. A. 3); The Bouker No. 2, 241 F. 831, 835 (C. C. A. 2). If a breach of the obligation to care for the sick or wounded seaman aggravated his condition and resulted, for example, in the amputation of a limb or in permanent disability, he could recover not only expenses for medical treatment, but compensatory damages as

Hunt, Hill & Betts, of New York City (George Whitefield Betts, Jr., and H. Victor Crawford, both of New York City, of counsel), for appellant.

Jesse L. Rosenberg, of New York City, for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

This is an action at law brought by the administrator of Victor Manuel Santiago, deceased, on the theory that his death was caused by the defendant's negligence. The defendant is a New Jersey corporation with an office in the city of New York, and it operated a vessel upon which Santiago

well. The Iroquois, 113 F. 964, 969 (D. C. N. D. Cal.) affirmed, 194 U. S. 240, 24 S. Ct. 640, 48 L. Ed. 955; The Troop, 128 F. 856 (C. C. A. 9); The City of Alexandria, 17 F. 390, 395 (D. C. S. D. N. Y.); Scarff v. Metcalf et al., 107 N. Y. 211, 216, 13 N. E. 796, 1 Am. St. Rep. 807; Benedict, Admiralty (5th Ed.) § 83. But if death resulted, no action lay, for neither the general maritime law nor the common law gave an action for the death of a person. Western Fuel Co. v. Garcia, 257 U. S. 233, 240, 42 S. Ct. 89, 66 L. Ed. 210; Lindgren v. United States, 281 U. S. 38, 47, 50 S. Ct. 207, 74 L. Ed. 686. Hence the plaintiff must show some statutory authorization for the present suit. He relies upon section 33 of the Merchant Marine Act (commonly referred to as the Jones Act), 41 Stat. 1007 (46 USCA § 688).

This statute provides that "any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law," in which action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply, and that, "in case of the death of any seaman as a result of any such personal injury," his personal representative may maintain an action for damages, and "in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable." The statutes referred to are the Federal Employers' Liability Act (35 Stat. 65), and its amendments (45 USCA §§ 51–59). Panama R. R. Co. v. Johnson, 264 U. S. 375, 391, 44 S. Ct. 391, 68 L. Ed. 748; Lindgren v. United States, supra. That act declares that a common carrier shall be liable in damages to any person suffering injury while he is employed by such carrier in interstate commerce, or, in case of the death of such employee, to his personal representative (for the benefit of designated surviving relatives), "for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." Section 1 (45 USCA § 51).

The chief question raised by this appeal is whether section 33 of the Jones Act can properly be construed as creating a cause of action for the death of a seaman resulting from an illness which he contracted without fault attributable to the defendant, where the ship's officers neglect to provide proper medical treatment and thereby (it is assumed) fail to check a curable illness or accelerate death from a noncurable one.

It is argued by the appellant that a seaman who falls ill without fault on the part of the ship does not suffer a "personal injury" within the meaning of the statute. But, if a failure to treat the illness aggravates the disease, we should find no difficulty in considering the aggravated condition as a "personal injury," assuming that the statute should be interpreted to have been meant to cover such a case. Analogies may be found in decisions under compensation statutes where acceleration of a pre-existing disease resulting in death is held to come within the term "injury." In re Brightman, 220 Mass. 17, 107 N. E. 527, L. R. A. 1916A, 321; Pace v. N. D. Workmen's Compensation Bureau, 51 N. D. 815, 201 N. W. 348.

It is another question whether the Jones Act was meant to cover such a case as the plaintiff's. On behalf of the appellant it is argued that the duty to provide cure is a contractual obligation (see Pacific Co. v. Peterson, 278 U. S. 130, 138, 49 S. Ct. 75, 78, 73 L. Ed. 220), and that nonperformance of a contractual obligation cannot be deemed "negligence" within the meaning of the Federal Employers' Liability Act, which by incorporation into the Jones Act is made applicable to seamen. We think the argument is valid. The Jones Act was intended to confer upon seamen the rights and remedies enjoyed by railway employees by virtue of the Federal Employers' Liability Act, one purpose of which, and perhaps the chief purpose, was to abrogate the fellow servant doctrine and make applicable the principle of respondeat superior in respect to injury or death resulting from tortious acts of the carrier's servants. See Jamison v. Encarnacion, 281 U. S. 635, 639, 50 S. Ct. 440, 74 L. Ed. 1082. A railway carrier owes no duty to provide medical treatment to an employee who becomes sick in its service, and no liability would exist for injury or death resulting from a failure to furnish such treatment. Even if such a duty were assumed by contract, we do not think a failure to act in performance of the contract would give rise to any liability under the Federal Employers' Liability Act, which presupposes an actionable tort, not liability under a contract. See Galveston, etc., Ry. Co. v. Hennegan, 33 Tex. Civ. App. 314, 76 S. W. 452; Willey v. Alaska Packers' Ass'n, 9 F.(2d) 937 (D. C. N. D. Cal.). If a tort is essential in the case of injury or death to a railway employee, the

statute can have no different meaning by reason of being made applicable to injuries to seamen. Moreover, if "negligence" were interpreted so broadly as to include every failure to furnish maintenance and cure, it would have the effect of affording under the Jones Act remedies for every breach of the maritime contract, except perhaps merely failure to pay wages. We do not believe this was intended. In Pacific Co. v. Peterson, supra, it was said that "the statute was not intended to restrict in any way the long-established right of a seaman to maintenance, cure and wages—to which it made no reference," and that no election was required "between the right to recover compensatory damages for a tortious injury under the new rule and the contractual right to maintenance, cure and wages under the old rules—the latter being a cumulative right and in no sense inconsistent with, or an alternative of, the right to recover compensatory damages." We regard this as an intimation that the Supreme Court thinks the old rights and remedies in respect to maintenance and cure outside the scope of the statute.

The only case discovered by the industry of counsel or by the court's own efforts, which has dealt directly with the problem here involved, is the opinion of Judge Kerrigan in the Willey Case, supra. There a libel was filed by the executor of a deceased sailor against the shipowner on a charge that a cold contracted by the sailor in the ship's service had developed into tuberculosis and resulted in his death because the defendant failed to give timely medical attention to the sailor's cold. A decree was entered for the defendant, and, on a motion for rehearing, Judge Kerrigan discussed the application of the Jones Act and held that the statute contemplated a death resulting from a negligent tort, and was inapplicable where the only affirmative duty shown to have been violated was the contractual duty to provide cure. On appeal the decree was affirmed, but on other grounds. 18 F.(2d) 8 (C. C. A. 9).

A similar interpretation of the Jones Act seems to have been made in Persson v. Gulf Refining Co., 228 App. Div. 366, 239 N. Y. S. 796; Id., 228 App. Div. 844, 240 N. Y. S. 892, where damages were claimed for injury,

not death. This was a suit by a seaman for compensatory damages based on two causes of action—the first, under the Jones Act for negligence in causing the plaintiff's injuries; the second, under the old maritime law for failure to provide him with cure for his injuries. The jury found for the defendant on the first cause of action, and for the plaintiff on the second. On appeal, the defendant assigned as error that the plaintiff had not been compelled to elect between his two causes of action. The court held that no election was necessary.

For reasons already stated, we are of opinion that the Jones Act does not provide a remedy for death resulting from an illness which occurred without fault on the part of the ship but was aggravated by a failure to perform the ship's maritime duty to provide cure. The paucity of authority on this question is itself somewhat persuasive that the statute should not be construed as the plaintiff contends. See The City of Alexandria (D. C.) 17 F. 390, 395.

The plaintiff contends that, even if no action for the death is given by the Jones Act, he should be allowed to maintain his suit under the New Jersey statute relating to death by wrongful act (2 Comp. St. 1910, p. 1907, § 7 et seq., as amended), which he requested leave to set up by amendment of his complaint. But we do not find proof in the record to sustain jurisdiction on the ground of diverse citizenship. There is an allegation in the complaint, denied by the answer, that the plaintiff resides in Brooklyn; but we find neither allegation nor proof of his citizenship. The defendant corporation is admittedly a citizen of New Jersey. Moreover, it may well be doubted whether the death statute of New Jersey can be relied on in view of Lindgren v. United States, 281 U. S. 38, 50 S. Ct. 207, 74 L. Ed. 686. This point, however, is not before us at the present time, and we do not decide it.

In accordance with the views above expressed, the defendant's motion to dismiss the complaint or to direct a verdict in its favor should have been granted.

Accordingly, the judgment is reversed, and the cause remanded.