## CORTES v. BALTIMORE INSULAR LINE, Inc.

District Court, S. D. New York.
April 14, 1934.

Jesse L. Rosenberg, of New York City, for plaintiff.

Hunt, Hill & Betts, of New York City, for defendant.

LETTS, District Judge.

There is before the court a motion to dismiss the complaint which was timely interposed by counsel for the defendant at the conclusion of all testimony. As the case then stood the question raised by the motion was one of law and of such a character that decision thereon was reserved, to the end that the jury might be permitted to pass upon the issues of fact and in event of a verdict for the plaintiff the matter left in such manner that if the motion be granted the appellate court, in event of differing with the trial court upon the legal question raised, could in the correction of any error have the full matter before it for final disposition. This practice, I take it, is clearly permissible under the New York Civil Practice Act (sec-

tion 459) and appears to be recognized as proper in the United States District Court sitting in this state. Italian Star Line v. United States Shipping Board E. F. Corp. (C. C. A.) 53 F.(2d) 359, 80 A. L. R. 576.

With the determination of this motion held in abeyance, the case was submitted to the jury and a verdict for the plaintiff returned. To clarify the issue raised by the motion, the facts and travel of the case to this point will be briefly stated.

The plaintiff is the administrator of one Victor Manuel Santiago, a seaman, who shipped on the defendant's vessel for a voyage from the harbor of New York to Boca Grande, Fla., and return, in October, 1928. On the homeward voyage Santiago fell ill with pneumonia and died in the Staten Island Marine Hospital the morning after reaching the home port. The diagnosis made at the hospital disclosed that he was then suffering from lobar pneumonia with consolidation of the lung cells on both sides. The administrator brought suit to recover damages for his death which, in the complaint, was charged to have been caused by the failure of the master of the ship to give proper care in fulfillment of the obligation to provide proper maintenance and cure.

The case has now been twice heard. Following the first trial, which resulted in a verdict for the plaintiff, the judgment was reversed by the Circuit Court of Appeals [52 F.(2d) 22] on the ground that the seaman's right of action for negligent care or cure was ended by his death and did not, under section 33 of the Merchant Marine Act of June 5, 1920, known as the Jones Act (46 USCA § 688), accrue to the administrator for the benefit of next of kin. Upon this issue the case was taken on certiorari to the United States Supreme Court, which reversed the Circuit Court of Appeals and held that the action would lie under the Jones Act. 287 U. S. 367, 53 S. Ct. 173, 177, 77 L. Ed. 368. In remanding the cause to the Court of Appeals for further proceedings, the Supreme Court said: "The Court of Appeals in its reversal of the District Court assumed without deciding that the care of the seaman had been negligent and that there was a causal relation between the negligence and the death. * * * These issues of fact being still open and undecided should be disposed of by the court below."

Following the receipt of this mandate, the Circuit Court of Appeals [66 F.(2d) 526] wrote another opinion remanding the cause to the District Court for a new trial.

██ I have before me the transcript of record of the first trial. Its perusal discloses that the testimony then presented in regard to the care and attention given the seaman was substantially the same as the evidence presented at the second trial. The Circuit Court of Appeals in its second opinion [66 F.(2d) 526, 528] said: " ° ˙ ˙ Although the ship's officers cannot be held to the skill of expert physicians in the matter of diagnosis, we think there was evidence which justified submitting to the jury the question whether they used reasonable care in looking after the sick seaman. ° ˙ ˙ "

Under the circumstances in which the case is now before us, that expression of view would seem controlling and leaves as the sole matter of law yet in doubt the sufficiency of the proof of causal relation between the established negligence of the defendant and Santiago's death. In commenting upon the medical testimony presented at the first trial upon this point, the Court of Appeals [66 F.(2d) 526, 528] had this to say: "It is true that Dr. Kienzle answered 'Yes' to the following question: 'Would you say, Doctor, that if Victor Manuel Santiago had been given reasonable medical treatment by the officers on board that ship after the 17th of October 1928, that his chance of surviving would have been greater than his chance of dying?' But this is scarcely equivalent to testimony that with reasonable certainty the defendant's neglect can be said to have caused the seaman's death. ° ˙ ˙ In addition, the doctor's opinion is subject to criticism because his entire testimony fails to show the type of pneumonia from which the seaman was suffering. Without medical testimony that it was one of the relatively less dangerous types, the jury could only speculate which it was, and, as we have already said, if it was the Friedlander type, a finding that death resulted from inadequate treatment could not be sustained."

Had the medical testimony presented at the second trial been identical with that at the first, I should feel compelled to accept the foregoing as an expression on the part of the Court of Appeals that causal connection between the negligence of the defendant and the seaman's death had not been sufficiently established to support jury finding of a causal relationship. The testimony did, in my opinion, sufficiently vary on the occasion of the second trial to justify its reconsideration de novo.

True, there was no positive testimony and obviously from the circumstances of the case none could be presented establishing, with certainty, the type of pneumonia from which the seaman died. There was, however, some testimony, apart from the matter of percentages of occurrence of the several types, which would justify the jury in concluding with reasonable probability that it was not the most dangerous Friedlander type. I am mindful that even if we accept the premise that the jury was justified from the evidence in that finding, still it is clear that no doctor could testify and no jury could find, with certainty, that had the most skillful treatment been available the seaman would have lived. It can only be said that had the ship's officers given to Santiago considerate and reasonable care within their limited knowledge and power to act, or had themselves, or with the assistance of the Coast Guard, put the patient ashore for hospitalization at a point en route instead of keeping him on board until their return to New York, his chance of recovery would have been substantially greater. It is obvious that in a trial of most issues between litigants more conclusive and satisfactory proof of causal connection than this would be required. The law must, however, to do justice between parties, recognize different degrees and standards of proof varied somewhat by the character, possibilities, and circumstances of the cause involved. Where one is fatally injured, no one with certainty can know what the individual's life's span would have been, but the law recognizes that the larger measure of justice is accomplished by assuming that the deceased had the average expectancy as established by the mortality tables. So we here do not know that the seaman would have lived had the defendant's negligence not intervened. We know only that from usual experience the wrongful act of the defendant substantially lessened his chance. Inconclusive and unsatisfactory as this kind of proof may be, there intrudes upon our consideration the query in a case of this character: Is not greater justice done by resting the burden of that uncertainty upon the wrongdoer, rather than the one wronged? My own mind is drawn to that view.

In this case when before the Supreme Court on the question of right to sue under the Jones Act, that court at page 375 of 287 U. S., 53 S. Ct. 173, 176, said: " ° ˙ ˙ This court has held that the act is to be liberally construed in aid of its beneficent purpose to give protection to the seaman and to those dependent on his earnings. ˙ ˙ ˙ " And again at page 378 of 287 U. S., 53 S. Ct. 173, 176: " ° ˙ ˙ Congress did not

mean that the standards of legal duty must be the same by land and sea. Congress meant no more than this, that the duty must be legal, i. e., imposed by law; that it shall have been imposed for the benefit of the seaman, and for the promotion of his health or safety. * * * "

If in this case we àccept as established the fact of negligent conduct of the defendant and deny recovery on the ground of insufficient proof of causal connection with death, there will be left open a class of cases under a statute intended for the protection of the health and safety of seamen where neglect of duty can be admitted with impunity. The spirit of our jurisprudence, while fostering conclusiveness and certainty, does not look with favor upon nurturing wrongdoing and denying a remedy. The nearest approximation to reasonable justice in this case necessitates the denial of the motion to dismiss.

Motion denied.